# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>vs.<br><br>DARYL LEE MAASSEN,<br><br>    Defendant. | No. CR07-4066-MWB<br><br>**REPORT AND RECOMMENDATION ON MOTION TO SUPPRESS** |

———————————

This matter is before the court on the defendant's motion (Doc. No. 9) to suppress evidence. The court held an evidentiary hearing on the motion on December 19, 2007, at which Assistant U.S. Attorney Forde Fairchild appeared on behalf of the plaintiff (the "Government), and the defendant Daryl Lee Maassen appeared in person with his attorney, Assistant Federal Defender Robert Wichser. The Government offered the testimony of I.R.S. Property and Liquidation Specialist Steve Hopkins. Maassen offered the testimony of his wife, Darlene Maassen, and Deputy U.S. Marshal Duane Walhof.

The following exhibits were entered into evidence: **Gov't Ex. 1** - Motion for an Amended Judgment and Order of Sale, Doc. No. 72, in C04-4112-DEO; **Def. Ex. A** - aerial photograph of real property owned by the Maassens in Lyon County, Iowa; **Def. Ex. B** - plat survey diagram of the Maassens' real property in Lyon County, Iowa. In addition, the court took judicial notice of an Order of Sale, Doc. No. 67, entered in C04-4112-DEO, and marked the order as **Court Ex. A**.

Maassen is charged with one count of possessing firearms and ammunition after having been convicted of a misdemeanor crime of domestic abuse, in violation of 18 U.S.C. §§ 922(g)(9) and 924(a)(2). Doc. No. 1. The somewhat unusual facts leading to Maassen's indictment, and forming the basis for his motion to suppress, are as follows.

In Case Number C04-4112-DEO, the United States obtained a judgment against Maassen and his wife, Darlene Maassen, in the amount of $338,770.12, representing unpaid federal income taxes, penalties and interest. The judgment also foreclosed federal tax liens against two adjoining parcels of real estate ("Parcel One" and "Parcel Two") owned by the Maassens, covering about ten acres in Lyon County, Iowa. Pursuant to the judgment, on June 6, 2007, the Government obtained an Order of Sale for the two parcels. *See* Court Ex. A. Among other things, the order directed the Maassens to vacate the property within thirty days. The order further provided that if they failed to vacate the property, a Property Appraisal and Liquidation Specialist of the Internal Revenue Service was authorized to take action to eject them from the property.

The Order of sale contained legal descriptions for both Parcel One and Parcel Two. The legal description for Parcel Two was as follows:

> A tract of land in the said North Half (N ½) of Section Thirty-five (35), Township Ninety-Eight (98) North, Range Forty-five (45), West of the 5th P.M., Lyon County, Iowa, more particularly described as follows:
>
> Commencing at the North Quarter Corner of Section 35; thence West 213 feet; thence South 676 feet; thence East 644 feet; thence North 676 feet; thence West 431 feet to the Point of Beginning, ***except that part thereof described as follows: Commencing at the North Quarter of said Section 35, running thence West 213 feet, thence south 676 feet, thence East 461 feet, thence North 145 feet, thence West 110 feet, thence North 234 feet, thence West 118 feet, thence North 297 feet to the North Line of said section to the Point of Beginning***.

Court Ex. A, p. 2 (emphasis added) (the italicized language will be referred to in this order as "the exception language," and the property described in exception language will be referred to as "the excepted property"). Significantly, the excepted property is where the

Maassens' residence and numerous outbuildings are located, as shown on Def. Ex. A.[1] Believing, correctly, that their home was not covered by the Order of Sale, the Maassens did not vacate their residence or the surrounding buildings. There were no buildings on Parcel Two, as described in the Order of sale.

When the Maassens did not vacate the property within thirty days, Steve Hopkins, the Property and Liquidation Specialist in charge of liquidating the Maassens' property, contacted the U.S. Marshal Service to request assistance in ejecting the Maassens from the property. Hopkins testified he does not carry a badge or a firearm, and he does not have the authority to arrest anyone. He requested the assistance of the U.S. Marshal Service for purposes of protecting his safety, a common practice in ejectment and seizure situations.

In preparation for the operation, Deputy U.S. Marshal Duane Walhof reviewed several of the filings in the court file of the civil case, including documents that contained the physical address for the Maassens' property and documents that contained the legal description. He looked at the property using MapQuest (www.mapquest.com). He talked with Hopkins, who had taken some photos of the property, and Walhof also visited the property and took some photos. He also talked with the Sioux County and Lyon County Sheriffs. Walhof was under the impression that the Order of Sale covered the entire ten acres of the Maassens' property, and Hopkins told him all of the buildings on the property were subject to the seizure order. In addition, Walhof noted the Order of Sale mentioned the Maassens were supposed to vacate the property and remove all of their personal belongings. This indicated to him that the residence was included in the order. Walhof

---

[1] On Def. Ex. A, the aerial photograph of the Maassens' property, all of the buildings and structures shown are within the excepted portion of Parcel Two except the white-roofed building in the upper left corner, near the road, which is on Parcel One. The Maassens' residence is shown roughly in the center of the photograph, surrounded by trees.

testified that an order for the sale of farm land, for example, typically does not contain language about removing personal property.

On August 28, 2007, Walhof met with Hopkins, another I.R.S. agent, Deputy U.S. Marshal Chad McCormick, and several members of local law enforcement, at the Law Enforcement Center in Lyon County. The purpose of the meeting was to decide on procedures for ejecting the Maassens from the property and seizure of the property. Walhof was in charge of the operation. He testified he had several reasons to be concerned about the security and safety of both the public and law enforcement in connection with the operation. First, it was his understanding from reviewing the court file in the civil case that Maassen is a tax protestor, and one of his concerns arose from his general knowledge of tax protestor cases. He indicated the Maassens' filings in the I.R.S. lawsuit contained language commonly used by groups that do not recognize the federal government's authority over them. Second, he was aware that Maassen had a couple of convictions for domestic violence, suggesting he has a volatile temper. Third, Walhof had talked with a Sioux County officer who indicated Maassen had fled on foot when the officer tried to arrest Maassen on a warrant for misdemeanor assault. Although Maassen had turned himself in a couple of days later, the fact that he had fled from apprehension on a misdemeanor charge raised concerns for Walhof about how Maassen might react to the officers' attempt to eject him from his home. Because of these concerns, Walhof requested the assistance of the local SWAT team for backup.

Walhof and McCormick proceeded to the Maassens' property, with the other officers and the civilians (Hopkins and the other I.R.S. agent) waiting until Walhof notified them before coming onto the property. Walhof and McCormick entered the property first, in plain clothes and driving an unmarked truck. They encountered Daryl and Darlene Maassen in the large driveway area of Parcel One that is shown just to the left of center in Def. Ex. A. Daryl Maassen was driving a forklift and Darlene Maassen was near a

pickup truck, where she was in the process of securing some lumber she and her husband had just loaded onto the truck. Walhof and McCormick engaged Daryl Maassen in conversation about the possibility of performing some work. Walhof stated they used this ruse to get close to Mr. Maassen so that he could detain him until they were able to secure the property. The ruse was successful, and the Marshals secured Maassen and his wife with handcuffs without incident, and as they did so, they identified themselves. They told the Maassens they were not under arrest, but that they had a court order to seize the property.

Maassen immediately asked to see a copy of the order, and Walhof agreed to show it to him. While Walhof was retrieving a copy of the order, he advised the SWAT team they could enter and begin a protective sweep of the property. Walhof showed Maassen the order, and Maassen informed Walhof that the real property containing the Maassens' residence and outbuildings was exempted from the court order. He indicated the officers had no right to be on his property and were trespassing.

Walhof called Hopkins and told him Maassen was claiming the property containing the house and buildings was not covered by the Order of Sale. To address this concern, Hopkins contacted Chris Nevel, an I.R.S. employee in Omaha, Nebraska, who acts as a liaison between agents who work field cases and I.R.S. attorneys. Hopkins asked Nevel to do an Internet search of Iowa's real estate records, and to compare the legal description of Parcel Two in those records with the legal description of Parcel Two in the Order of Sale. Nevel called Hopkins back and read to him the legal description of Parcel Two from the real estate records. This legal description was different from the legal description of Parcel Two in the Order of Sale in that it *did not* contain the exception language. From this information, it should have been clear that at least some property in Parcel Two, as described in the state real estate records, was owned by the Maassens but was not covered

5

by the legal description of Parcel Two in the Order of Sale. Nevertheless, Nevel specifically told Hopkins that the buildings were covered by the order.

While Nevel was conducting this research, the SWAT team was doing a protective sweep of the property. Inside the residence, the officers discovered a 12-gauge shotgun, a .22 caliber rifle, and some ammunition. This evidence is the basis of the criminal charge now pending in this court against Maassen for possessing firearms and ammunition after having been convicted of a misdemeanor crime of domestic abuse.

After the protective sweep of the property was completed, Walhof called Hopkins and asked him to come up to the Maassens' residence to speak with Darlene Maassen. Hopkins and the other I.R.S. agent met Darlene at the corner of the residence, by the garage. Present with Darlene were McCormick and a female ATF agent. Darlene repeated the claim the Order of Sale did not include the house, and the officers did not have the right to be in the house. She indicated she had some documents in the house that might help clarify matters, and she was allowed to retrieve them. She produced some partial abstracts, which she showed to Hopkins and the officers. Hopkins was unable to determine anything from the partial abstracts.

Hopkins then called the Lyon County Auditor and asked her to look at the plat map and provide him with the legal description for Parcel Two. She read Hopkins the legal description, which was identical to the legal description provided by Nevel; i.e., it matched the legal description of Parcel Two shown in the Order of Sale down to the exception language. Hopkins turned his cell phone on "speaker" so that everyone present, including Darlene Maassen, could hear the Auditor. He then asked the Auditor if the house and buildings were on Parcel Two, and she replied, "Yes."

The specific sequence of these events may have a bearing on how the legal issues are resolved. The evidence establishes that Maassen told Wolhof that his residence and the buildings were not covered by the Order of Sale before the firearms and ammunition

6

were discovered. It appears that Hopkins received the erroneous confirmation from Nevel that the residence and buildings were covered by the order at about the same time the firearms and ammunition were discovered, although this is not clear. The evidence does clearly show, however, that the firearms and ammunition were discovered before Hopkins arrived on the scene.

After the seizure of the Maassens' property, Hopkins continued to believe the Order of Sale authorized seizure of the entirety of the Maassens' property despite the exception language in the description of Parcel Two. In his testimony, he indicated it did not make sense to him, logically, that the I.R.S. would foreclose on less than the entire property. Three days later, however, he discovered the legal description of Parcel Two used throughout the I.R.S. lawsuit was incorrect. The description had been taken from an earlier warranty deed, when the Maassens had purchased the ten-acre parcel *except* for the excepted property. They purchased the excepted property, which contained their residence and several other buildings, at a later time. After that second purchase, a quitclaim deed was issued to combine the legal descriptions from the two purchases. This was the only deed containing the correct legal description for the entire ten-acre parcel. Apparently, when the I.R.S. was preparing the matter for referral to the U.S. Attorney for the filing of the lawsuit against the Maassens, a clerical error was made and the legal description from the first warranty deed was used, which excepted the portion of Parcel Two containing the Maassens' residence and the buildings. As a result, the Order of Sale only covered that portion of Parcel Two that contained no buildings.[2]

Thus, the record establishes that on August 28, 2007, the officers did not have a right to be on the property containing the Maassens' residence. The Order of Sale specifically excepted that property from the operation of the order. Because the officers

---

[2] The Government now has applied for an amended judgment and order of sale in the civil case. *See* Gov't Ex. 1. This has no bearing on the analysis the court must undertake to rule on the pending motion to suppress.

were unlawfully within Maassen's home when they discovered the firearms and ammunition, Maassen has moved for suppression of the firearms and ammunition, and any evidence or statements flowing from discovery of the firearms and ammunition.

Maassen argues the search of his home was an unauthorized, warrantless search that violated his Fourth Amendment right to be free from unreasonable search and seizure. He argues the officers had no reason to believe he was armed or dangerous, there was no immediate need for the officers to enter his residence, and the officers were not on the property to investigate a crime. Rather, they were present to enforce a civil order. Maassen asserts that allowing service of a civil court order "to act as justification for a warrantless search would allow law enforcement agents to create their own exigent circumstances." Doc. No. 9-2 at 5. Further, Maassen argues the "good faith" exception to the exclusionary rule, established in *United States v. Leon*, 468 U.S. 897, 104 S. Ct. 3405, 82 L. Ed. 2d 677 (1984), is not applicable here because there was no "invalid search warrant" upon which the officers reasonably relied. Doc. No. 9-2 at 7 (citing *United States v. Marts*, 986 F.2d 1216, 1219 (8th Cir. 1993) ("The good faith exception in *Leon* was announced in response to a factual situation where officers were acting in reasonable, good faith reliance upon a search warrant which was ultimately found to be invalid."). The Government resists, arguing that even if the *Leon* exception to the exclusionary rule is not applicable to the facts of this case, "the government is free to ask this Court to consider the objective good faith of the executing officers." Doc. No. 17-2, p. 4.[3]

The Government responds that officers are allowed some latitude for honest mistakes in making arrests and executing search warrants. *Id.*; *see Maryland v. Garrison*, 480 U.S. 79, 87, 107 S.Ct. 1013, 1018, 94 L.Ed.2d 72 (1987); *see Brinegar v. United*

---

[3]The Government also argued that in any event, the officers would have been authorized to conduct a protective sweep of the property as "spaces immediately adjoining the place of arrest," and the guns and ammunition inevitably would have been discovered. *Id.*, p. 6 (citing *Maryland v. Buie*, 494 U.S. 325, 334, 110 S. Ct. 1093, 1098, 108 L. Ed. 2d 276 (1990). The Government withdrew this argument at the suppression hearing.

*States*, 338 U.S. 160, 176, 69 S.Ct. 1302, 1311, 93 L.Ed. 1879 (1949) ("Because many situations which confront officers in the course of executing their duties are more or less ambiguous, room must be allowed for some mistakes on their part. But the mistakes must be those of reasonable men, acting on facts leading sensibly to their conclusions of probability.") The Government argues that the executing officers objectively acted in good faith, and therefore, as in *Leon*, the evidence should not be suppressed.

The Supreme Court first adopted the federal exclusionary rule, barring the use of evidence secured through an illegal search and seizure, in *Weeks v. United States*, 232 U.S. 383, 34 S.Ct. 341, 58 L.Ed. 652 (1914). In *Leon*, the Supreme Court established an exception to the rule governing "evidence found by officers relying in objective good faith on a defective search warrant." *United States v. Guzman*, 507 F.3d 681, 685 (8th Cir. 2007) (citing *Leon*; *Mapp v. Ohio*, 367 U.S. 643, 81 S. Ct. 1684, 6 L. Ed. 2d 1081 (1961)). In assessing the objective reasonableness of the officers who execute a warrant, the court looks to the totality of the circumstances, including all of the information known to the officers. *See id.* (citing *United States v. Marion*, 238 F.3d 965, 969 (8th Cir. 2001)).

The Supreme Court explained that the purpose of the exclusionary rule is to act as a deterrent to officer misconduct. *See Leon*, 468 U.S. at 918, 104 S. Ct. at 3418. "'The deterrent purpose of the exclusionary rule necessarily assumes that the police have engaged in willful, or at the very least negligent, conduct which has deprived the defendant of some right.'" *Id.*, 468 U.S. at 919, 104. S. Ct. at 3419 (quoting *United States v. Peltier*, 422 U.S. 531, 539, 95 S. Ct. 2313, 2318, 45 L. Ed. 2d 374 (1975)). But absent evidence that the officers either had knowledge, or properly could be charged with knowledge, that a search was unconstitutional under the Fourth Amendment, the evidence obtained from such a search should not be suppressed. *Id.* (citing *Peltier*, 422 U.S. at 542, 95 S. Ct. at 2320); *accord Illinois v. Krull*, 480 U.S. 340, 348-49, 107 S. Ct. 1160, 1166, 94 L. Ed. 2d 364

(1987) (similarly quoting *Peltier*). The standard of review is the objective reasonableness of the officers' actions, not "the subjective good faith of individual officers." *Id.*, 468 U.S. at 919 n.20, 104 S. Ct. at 3419 n.20. Thus, the Court held:

> In short, where the officer's conduct is objectively reasonable, "excluding the evidence will not further the ends of the exclusionary rule in any appreciable way; for it is painfully apparent that . . . the officer is acting as a reasonable officer would and should act in similar circumstances. Excluding the evidence can in no way affect his future conduct unless it is to make him less willing to do his duty." *Stone v. Powell*, 428 U.S. [465], 539-540, 96 S. Ct. [3037], 3073-3074[, 49 L. #d. 2d 1067 (2976)] (WHITE, J., dissenting).

*Leon*, 468 U.S. at 919-20, 104 S. Ct. at 3419.

There is no question that the seizure of items from the Maassens' residence was in violation of the guarantee of the Fourth Amendment of "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures . . . ." The evidence establishes that Maassen's residence was not covered by the Order of Sale. Therefore, the officers had no right to be inside the residence when they discovered and seized the firearms and ammunition that resulted in this prosecution. The only question here is whether suppression is the appropriate remedy for this Fourth Amendment violation. The Government argues under the principles announced in *Leon*, suppression is not called for because the officers did not engage in willful or negligent conduct. Doc. No. 17-2, pp. 3-4, citing *Leon*, 468 U.S. at 919, 104 S. Ct. at 3419.

Maassen argues that since there was no warrant authorizing the officers to enter the Maassens' residence, *Leon* does not apply. Several courts have held that *Leon* is inapplicable to warrantless searches. The Ninth Circuit Court of Appeals, in particular, has declined to extend *Leon*'s good faith exception to warrantless searches. *See United States v. Winsor*, 846 F.2d 1569, 1579 (9th Cir. 1988) (en banc) (good faith exception only applies "to searches conducted in good faith reliance on a warrant or a statute later

declared to be unconstitutional"); *United States v. Whiting*, 781 F.2d 692, 698-99 (9th Cir. 1986) (*Leon* exception should "not be applied to invalid warrantless searches"); *United States v. Miller*, 769 F.2d 554, 560 n.5 (9th Cir. 1985) ("We do not see how [*Leon*'s] good faith exception for reasonable reliance on invalid warrants has any application to the warrantless search involved in the instant case"). *See also Arizona v. Evans*, 514 U.S. 1, 18, 115 S. Ct. 1185, 1196, 131 L. Ed. 2d 34 (1995) ("The reasoning in *Leon* assumed the existence of a warrant; it was, and remains, wholly inapplicable to warrantless searches and seizures.") (Stevens, J., dissenting); *United States v. Curzi*, 867 F.2d 36, 44 (1st Cir. 1989) ("this court has not recognized a good-faith exception in respect to warrantless searches"); *United States v. Morgan*, 743 F.2d 1158, 1165 (6th Cir. 1984) (*Leon* is inapplicable where officers do not have a warrant, even when government argues the existence of "exigent circumstances"); *United States v. Morales*, 913 F. Supp. 132, 135 (D.R.I. 1996) ("The First Circuit Court of Appeals refuses to recognize a good faith exception to warrantless searches.") (citing *Curzi*); *United States v. Boffman*, 747 F. Supp. 1251, 1254 (S.D. Ohio 1990) (*Leon* "good faith" exception does not apply when police act without a warrant) (citing 2 Wright, *Federal Practice & Procedure* § 408 (2d ed. 1982 & Supp. 1990)). *But see United States v. Herrera*, 444 F.3d 1238, 1253 (10th Cir. 2006) (suggesting good faith exception could apply to some warrantless searches, although not "when the mistake resulting in the Fourth Amendment violation is that of the officer conducting the seizure and search, rather than a neutral third party not engaged in the 'competitive endeavor of ferreting out crime.'") (citing *Leon*, 468 U.S. at 914, 104 S. Ct. at 3416)).

The Government responds by arguing that the Order of Sale was tantamount to a warrant, arguing "a federal court order may lawfully substitute for a search warrant." Doc. No. 17-2, p. 3 n.2 (citations omitted). There is support in the jurisprudence for the Government's position. *See Audio Odyssey, Ltd. v. Brenton First Nat'l Bank*, 245 F.3d

721, 737 (8th Cir. 2001) (recognizing that the Fourth Amendment protects "against seizure of one's property in the absence of a warrant, an equivalent court order, or circumstances justifying a recognized exception to the warrant requirement) (citing *Walden v. Carmack*, 156 F.3d 861, 868-69 (8th Cir. 1998)) (subsequent history omitted as irrelevant); *Nicholson v. Scoppetta*, 344 F.3d 154, 176 (2d Cir. 2003) (holding "a Family Court order is probably the equivalent of a warrant for Fourth Amendment purposes") (citing *Tenenbaum v. Williams*, 194 F.3d 581, 602 (2d Cir. 1999)); *United States v. Mendez-Jimenez*, 709 F.2d 1300, 1302 (9th Cir. 1983) ("A court order compelling a person to submit to an x-ray examination is the equivalent of a search warrant for a body cavity search.") (citing *United States v. Erwin*, 625 F.2d 838, 840 (9th Cir. 1980)); *Nat'l Eng. & Contr. Co. v. U.S. Dept. of Labor*, 687 F. Supp. 1219, 1221 (S.D. Ohio 1988) (holding court order for nonconsensual OSHA inspection was "the equivalent of a warrant"); *see also United States v. Giordano*, 416 U.S. 505, 554, 94 S. Ct. 1820, 1845, 40 L. Ed. 2d 341 (1974) (noting court order for authorization to use pen register is "the equivalent for this purpose of a search warrant") (Powell, J., concurring in part and dissenting in part); *United States v. Garcia*, 2006 WL 298704 at *6 (W.D. Wis. Feb. 3, 2006) (noting court orders for use of certain electronic surveillance devices are "court orders equivalent to warrants"); *cf. New York v. Burger*, 482 U.S. 691, 107 S. Ct. 2636, 96 L. Ed. 2d 601 (1987) (examining New York statute allowing administrative searches of commercial premises in "closely regulated" industry, Court recognized that a regulatory statute may, in certain prescribed circumstances, be a constitutionally-adequate substitute for a warrant); *accord Stegall v. Russo*, 138 Fed. Appx. 884, 885 (8th Cir. 2005) (citing *Burger*); *United States v. Mendoza-Gonzalez*, 363 F.3d 788, 793-94 (8th Cir. 2004) (same); *United States v Knight*, 306 F.3d 534, 535 (8th Cir. 2002) (same).

The Eighth Circuit Court of Appeals has not considered the specific issue of whether the exclusionary rule should apply in the context of a civil order authorizing

seizure of property. However, in *Hroch v. City of Omaha*, 4 F.3d 693, 696-97 (8th Cir. 1993), the court expressed doubt "that an administrative condemnation or seizure order may never be implemented without a judicial warrant." In a footnote, the court observed that "while the Fourth Amendment applies to civil administrative seizures, 'judicial restraint is [often] imposed through a different form of proceeding than the showing of probable cause before a magistrate.'" *Id.*, 4 F.3d at 697 n.3 (citations omitted). *See also United States v. $511,780*, 847 F. Supp. 908, 915 n.3 (M.D. Ala.) ("observing the Eleventh Circuit "has suggested that the exclusionary rule applies to civil forfeiture proceedings," citing cases).

It is questionable whether the exclusionary rule should apply at all to evidence discovered during the lawful execution of a court order by officers of the court. The exclusionary rule is not intended to address every violation of a Constitutional right. The Supreme Court has made it very clear that the exclusionary rule should only be applied where it would serve a remedial objective, and where it would strongly deter unlawful conduct by law enforcement officers. The Court recently explained this approach in *Hudson v. Michigan*, --- U.S. ----, 126 S.Ct. 2159, 165 L.Ed.2d 56 (2006):

> Suppression of evidence, however, has always been our last resort, not our first impulse. The exclusionary rule generates "substantial social costs," *United States v. Leon*, 468 U.S. 897, 907, 104 S.Ct. 3405 (1984), which sometimes include setting the guilty free and the dangerous at large. We have therefore been "cautio[us] against expanding" it, *Colorado v. Connelly*, 479 U.S. 157, 166, 107 S.Ct. 515, 93 L.Ed.2d 473 (1986), and "have repeatedly emphasized that the rule's 'costly toll' upon truth-seeking and law enforcement objectives presents a high obstacle for those urging [its] application," *Pennsylvania Bd. of Probation and Parole v. Scott*, 524 U.S. 357, 364-365, 118 S.Ct. 2014, 141 L.Ed.2d 344 (1998) (citation omitted). We have rejected "[i]ndiscriminate application" of the rule, *Leon*, *supra*, at 908, 104 S.Ct. 3405, and have held it to be applicable only "where its remedial

13

> objectives are thought most efficaciously served," *United States v. Calandra*, 414 U.S. 338, 348, 94 S.Ct. 613, 38 L.Ed.2d 561 (1974)-that is, "where its deterrence benefits outweigh its 'substantial social costs,'" *Scott*, *supra*, at 363, 118 S.Ct. 2014 (quoting *Leon*, *supra*, at 907, 104 S.Ct. 3405).

*Id*, 126 S.Ct. at 2163. In a situation where officers acted pursuant to a statute later found to be unconstitutional, the Court stated, "The application of the exclusionary rule to suppress evidence obtained by an officer acting in objectively reasonable reliance on a statute would have as little deterrent effect on the officer's actions as would the exclusion of evidence when an officer acts in objectively reasonable reliance on a warrant." *Illinois v. Krull*, 480 U.S. 340, 349, 107 S.Ct. 1160, 1167 (1987) (exclusionary rule does not apply to evidence obtained by police who acted in objectively reasonable reliance upon statute authorizing warrantless administrative searches, but which is subsequently found to violate Fourth Amendment).

In the present case, the officers enforcing the Order of Sale were objectively reasonable in relying on others to decipher the complexities of a confusing legal description. The fact that the information they received and relied on was incorrect does not diminish the reasonableness of their reliance. Although the court would have hoped that the I.R.S. would have been more vigilant and would have caught this error, there is no evidence that anyone, including the agents of the I.R.S., acted willfully, and there is nothing to suggest that application of the exclusionary rule here would eliminate this type of accident in the future. This was simply an unfortunate mistake of the type that seems to occur more frequently as our society becomes ever more complex.

Even if the exclusionary rule could properly be applied to evidence seized during the execution of a court order, the *Leon* "good faith" exception should be applied under the circumstances of this case. Maassen argues that the *Leon* "good faith" exception to the exclusionary rule applies, by its terms, only to Constitutionally deficient search warrants, and should not be applied to court orders. The court does not accept this distinction. Both

14

a court order permitting the entry onto and seizure of property and a search warrant have the imprimatur of the court, and both can authorize entry onto and seizure of property. Although a search warrant is issued only after a showing of probable cause, the Order for Sale in this case was issued only after the conclusion of a trial and the entry of judgment in favor of the Government. The due process supporting the Order of Sale issued in this case was actually superior in many respects to the process ordinarily followed in connection with the issuance of a search warrant.

The legal authorities holding that the *Leon* "good faith" exception does not apply to warrantless searches or seizures do not control the issue presented here. In those cases, the Fourth Amendment guarantee of freedom from unreasonable searches and seizures was violated, and there was no search warrant to which the good faith exception could apply. Here, there was a court order authorizing the officers to take possession of the property.

There is no evidence that the officers serving the Order of Sale willfully violated Maassen's Fourth Amendment rights. At most, the evidence shows they were confused and mistaken. *Illinios v.Krull*, *supra*; cf. *Arizona v. Evans*, 514 U.S. 1, 14, 115 S.Ct. 1185, 131 L.Ed.2d 34 (1995) (extending "good faith exception" to the exclusionary rule to circumstances in which officers rely in good faith on a court employee's representation that a valid warrant existed when, in fact, the warrant has previously been quashed.) There is little likelihood that application of the exclusionary rule to these facts would deter similar conduct in the future. The *Leon* exception to the exclusionary rule should apply to a court order such as the one in the present case with no less force than it would apply to a deficient search warrant. Under these circumstances, the motion to suppress should be denied.

For these reasons, **IT IS RESPECTFULLY RECOMMENDED** that Maassen's motion to suppress be **denied**. Any party who objects to this Report and Recommendation

must serve and file specific, written objections by **January 14, 2008**.  Any response to the objections must be served and filed by **January 21, 2008**.

IMPORTANT NOTE:  Any party planning to lodge any objection to this report and recommendation must order a transcript of the hearing promptly, but not later than **January 4, 2008**, <u>regardless of whether the party believes a transcript is necessary to argue the objection</u>.  If an attorney files an objection to this report and recommendation without having ordered the transcript as required by this order, the court may impose sanctions on the attorney.

**IT IS SO ORDERED.**

**DATED** this 31st day of December, 2007.

*[signature]*

PAUL A. ZOSS
CHIEF MAGISTRATE JUDGE
UNITED STATES DISTRICT COURT