**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF IOWA**
**WESTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ‖ | |
| Plaintiff, | ‖ | No. CR07-4066-MWB |
| | ‖ | |
| vs. | ‖ | **ORDER REGARDING** |
| | ‖ | **MAGISTRATE'S REPORT AND** |
| DARYL LEE MAASSEN, | ‖ | **RECOMMENDATION** |
| | ‖ | **CONCERNING DEFENDANT'S** |
| Defendant. | ‖ | **MOTION TO SUPPRESS** |

———————————

**TABLE OF CONTENTS**

*I. INTRODUCTION AND BACKGROUND* . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
    *A. Procedural Background* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
    *B. Factual Background* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*II. LEGAL ANALYSIS* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
    *A. Standard Of Review* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
    *B. Objections To Findings Of Fact* . . . . . . . . . . . . . . . . . . . . . . . . 15
        *1. Buildings on Parcel Two* . . . . . . . . . . . . . . . . . . . 15
        *2. Timing of SWAT team's protective sweep* . . . . . . . . . . . . . 15
        *3. The scope of the Order of Sale* . . . . . . . . . . . . . . . . . 16
    *C. Objections To Legal Conclusions* . . . . . . . . . . . . . . . . . . . . . . . 17
        *1. Applicability of Leon type good faith exception here* . . . . . 17
        *2. Were officers' actions objectively reasonable* . . . . . . . . . 21

*III. CONCLUSION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

# I.  INTRODUCTION AND BACKGROUND

## A.  Procedural Background

On September 27, 2007, an indictment was returned against defendant Daryl Lee Maassen charging him with possession of firearms and ammunition after having been convicted of a misdemeanor crime of domestic violence, in violation of 18 U.S.C. §§ 922(g)(9) and 924(a)(2).  On December 1, 2007, defendant Maassen filed a motion to suppress evidence in which he seeks to suppress evidence found during a search of his home, arguing that law enforcement officers entered his home without a search warrant in violation of the Fourth Amendment of the United States Constitution.  Defendant Maassen further argues the "good faith" exception to the exclusionary rule, established in *United States v. Leon*, 468 U.S. 897 (1984), is not applicable here because there was no search warrant upon which the law enforcement officers could have reasonably relied.  The prosecution filed a timely resistance to defendant Maassen's motion.

Defendant Maassen's motion to suppress was referred to Chief United States Magistrate Judge Paul A. Zoss, pursuant to 28 U.S.C. § 636(b).  On December 19, 2007, Judge Zoss conducted an evidentiary hearing.  On December 31, 2007, Judge Zoss filed a Report and Recommendation in which he recommends that defendant Maassen's motion to suppress be denied.  Judge Zoss concluded that the law enforcement officers enforcing an order of sale were objectively reasonable in relying on others to decipher the complexities of a confusing legal description in the order of sale and that, therefore, the *Leon* exception to the exclusionary rule should apply to a court order with no less force than it would apply to a deficient search warrant.  Accordingly, Judge Zoss recommended that defendant Maassen's motion to suppress be denied.  Defendant Maassen then sought and was granted an extension of time in which to file objections to Judge Zoss's Report and Recommendation.  Defendant Maassen has now filed objections to Judge Zoss's

Report and Recommendation. The court, therefore, undertakes the necessary review of Judge Zoss's recommended disposition of defendant Maassen's motion to suppress.

## B. Factual Background

In his Report and Recommendation, Judge Zoss made the following findings of fact:

> In Case Number C04-4112-DEO, the United States obtained a judgment against Maassen and his wife, Darlene Maassen, in the amount of $338,770.12, representing unpaid federal income taxes, penalties and interest. The judgment also foreclosed federal tax liens against two adjoining parcels of real estate ("Parcel One" and "Parcel Two") owned by the Maassens, covering about ten acres in Lyon County, Iowa. Pursuant to the judgment, on June 6, 2007, the Government obtained an Order of Sale for the two parcels. *See* Court Ex. A. Among other things, the order directed the Maassens to vacate the property within thirty days. The order further provided that if they failed to vacate the property, a Property Appraisal and Liquidation Specialist of the Internal Revenue Service was authorized to take action to eject them from the property.
>
> The Order of sale contained legal descriptions for both Parcel One and Parcel Two. The legal description for Parcel Two was as follows:
>
> > A tract of land in the said North Half (N ½) of Section Thirty-five (35), Township Ninety-Eight (98) North, Range Forty-five (45), West of the 5th P.M., Lyon County, Iowa, more particularly described as follows:
> >
> > Commencing at the North Quarter Corner of Section 35; thence West 213 feet; thence South 676 feet; thence East 644 feet; thence North 676 feet; thence West 431 feet to the Point of Beginning, ***except that part thereof described as follows: Commencing at the North Quarter of said Section 35, running thence West 213***

3

*feet, thence south 676 feet, thence East 461 feet, thence North 145 feet, thence West 110 feet, thence North 234 feet, thence West 118 feet, thence North 297 feet to the North Line of said section to the Point of Beginning*.

Court Ex. A, p. 2 (emphasis added) (the italicized language will be referred to in this order as "the exception language," and the property described in exception language will be referred to as "the excepted property"). Significantly, the excepted property is where the Maassens' residence and numerous outbuildings are located, as shown on Defendant. Ex. A. Believing, correctly, that their home was not covered by the Order of Sale, the Maassens did not vacate their residence or the surrounding buildings. There were no buildings on Parcel Two, as described in the Order of sale.

When the Maassens did not vacate the property within thirty days, Steve Hopkins, the Property and Liquidation Specialist in charge of liquidating the Maassens' property, contacted the U.S. Marshal Service to request assistance in ejecting the Maassens from the property. Hopkins testified he does not carry a badge or a firearm, and he does not have the authority to arrest anyone. He requested the assistance of the U.S. Marshal Service for purposes of protecting his safety, a common practice in ejectment and seizure situations.

In preparation for the operation, Deputy U.S. Marshal Duane Walhof reviewed several of the filings in the court file of the civil case, including documents that contained the physical address for the Maassens' property and documents that contained the legal description. He looked at the property using MapQuest (www.mapquest.com). He talked with Hopkins, who had taken some photos of the property, and Walhof also visited the property and took some photos. He also talked with the Sioux County and Lyon County Sheriffs. Walhof was under the impression that the Order of Sale covered the entire ten acres of the Maassens' property, and

Hopkins told him all of the buildings on the property were subject to the seizure order. In addition, Walhof noted the Order of Sale mentioned the Maassens were supposed to vacate the property and remove all of their personal belongings. This indicated to him that the residence was included in the order. Walhof testified that an order for the sale of farm land, for example, typically does not contain language about removing personal property.

On August 28, 2007, Walhof met with Hopkins, another I.R.S. agent, Deputy U.S. Marshal Chad McCormick, and several members of local law enforcement, at the Law Enforcement Center in Lyon County. The purpose of the meeting was to decide on procedures for ejecting the Maassens from the property and seizure of the property. Walhof was in charge of the operation. He testified he had several reasons to be concerned about the security and safety of both the public and law enforcement in connection with the operation. First, it was his understanding from reviewing the court file in the civil case that Maassen is a tax protestor, and one of his concerns arose from his general knowledge of tax protestor cases. He indicated the Maassens' filings in the I.R.S. lawsuit contained language commonly used by groups that do not recognize the federal government's authority over them. Second, he was aware that Maassen had a couple of convictions for domestic violence, suggesting he has a volatile temper. Third, Walhof had talked with a Sioux County officer who indicated Maassen had fled on foot when the officer tried to arrest Maassen on a warrant for misdemeanor assault. Although Maassen had turned himself in a couple of days later, the fact that he had fled from apprehension on a misdemeanor charge raised concerns for Walhof about how Maassen might react to the officers' attempt to eject him from his home. Because of these concerns, Walhof requested the assistance of the local SWAT team for backup.

Walhof and McCormick proceeded to the Maassens'

property, with the other officers and the civilians (Hopkins and the other I.R.S. agent) waiting until Walhof notified them before coming onto the property. Walhof and McCormick entered the property first, in plain clothes and driving an unmarked truck. They encountered Daryl and Darlene Maassen in the large driveway area of Parcel One that is shown just to the left of center in Defendant. Ex. A. Daryl Maassen was driving a forklift and Darlene Maassen was near a pickup truck, where she was in the process of securing some lumber she and her husband had just loaded onto the truck. Walhof and McCormick engaged Daryl Maassen in conversation about the possibility of performing some work. Walhof stated they used this ruse to get close to Mr. Maassen so that he could detain him until they were able to secure the property. The ruse was successful, and the Marshals secured Maassen and his wife with handcuffs without incident, and as they did so, they identified themselves. They told the Maassens they were not under arrest, but that they had a court order to seize the property.

Maassen immediately asked to see a copy of the order, and Walhof agreed to show it to him. While Walhof was retrieving a copy of the order, he advised the SWAT team they could enter and begin a protective sweep of the property. Walhof showed Maassen the order, and Maassen informed Walhof that the real property containing the Maassens' residence and outbuildings was exempted from the court order. He indicated the officers had no right to be on his property and were trespassing.

Walhof called Hopkins and told him Maassen was claiming the property containing the house and buildings was not covered by the Order of Sale. To address this concern, Hopkins contacted Chris Nevel, an I.R.S. employee in Omaha, Nebraska, who acts as a liaison between agents who work field cases and I.R.S. attorneys. Hopkins asked Nevel to do an Internet search of Iowa's real estate records, and to compare

the legal description of Parcel Two in those records with the legal description of Parcel Two in the Order of Sale. Nevel called Hopkins back and read to him the legal description of Parcel Two from the real estate records. This legal description was different from the legal description of Parcel Two in the Order of Sale in that it *did not* contain the exception language. From this information, it should have been clear that at least some property in Parcel Two, as described in the state real estate records, was owned by the Maassens but was not covered by the legal description of Parcel Two in the Order of Sale. Nevertheless, Nevel specifically told Hopkins that the buildings were covered by the order.

While Nevel was conducting this research, the SWAT team was doing a protective sweep of the property. Inside the residence, the officers discovered a 12-gauge shotgun, a .22 caliber rifle, and some ammunition. This evidence is the basis of the criminal charge now pending in this court against Maassen for possessing firearms and ammunition after having been convicted of a misdemeanor crime of domestic abuse.

After the protective sweep of the property was completed, Walhof called Hopkins and asked him to come up to the Maassens' residence to speak with Darlene Maassen. Hopkins and the other I.R.S. agent met Darlene at the corner of the residence, by the garage. Present with Darlene were McCormick and a female ATF agent. Darlene repeated the claim the Order of Sale did not include the house, and the officers did not have the right to be in the house. She indicated she had some documents in the house that might help clarify matters, and she was allowed to retrieve them. She produced some partial abstracts, which she showed to Hopkins and the officers. Hopkins was unable to determine anything from the partial abstracts.

Hopkins then called the Lyon County Auditor and asked her to look at the plat map and provide him with the legal

description for Parcel Two. She read Hopkins the legal description, which was identical to the legal description provided by Nevel; i.e., it matched the legal description of Parcel Two shown in the Order of Sale down to the exception language. Hopkins turned his cell phone on "speaker" so that everyone present, including Darlene Maassen, could hear the Auditor. He then asked the Auditor if the house and buildings were on Parcel Two, and she replied, "Yes."

The specific sequence of these events may have a bearing on how the legal issues are resolved. The evidence establishes that Maassen told Wolhof that his residence and the buildings were not covered by the Order of Sale before the firearms and ammunition were discovered. It appears that Hopkins received the erroneous confirmation from Nevel that the residence and buildings were covered by the order at about the same time the firearms and ammunition were discovered, although this is not clear. The evidence does clearly show, however, that the firearms and ammunition were discovered before Hopkins arrived on the scene.

After the seizure of the Maassens' property, Hopkins continued to believe the Order of Sale authorized seizure of the entirety of the Maassens' property despite the exception language in the description of Parcel Two. In his testimony, he indicated it did not make sense to him, logically, that the I.R.S. would foreclose on less than the entire property. Three days later, however, he discovered the legal description of Parcel Two used throughout the I.R.S. lawsuit was incorrect. The description had been taken from an earlier warranty deed, when the Maassens had purchased the ten-acre parcel *except* for the excepted property. They purchased the excepted property, which contained their residence and several other buildings, at a later time. After that second purchase, a quitclaim deed was issued to combine the legal descriptions from the two purchases. This was the only deed containing the correct legal description for the entire ten-acre parcel.

Apparently, when the I.R.S. was preparing the matter for referral to the U.S. Attorney for the filing of the lawsuit against the Maassens, a clerical error was made and the legal description from the first warranty deed was used, which excepted the portion of Parcel Two containing the Maassens' residence and the buildings. As a result, the Order of Sale only covered that portion of Parcel Two that contained no buildings.

Thus, the record establishes that on August 28, 2007, the officers did not have a right to be on the property containing the Maassens' residence. The Order of Sale specifically excepted that property from the operation of the order. Because the officers were unlawfully within Maassen's home when they discovered the firearms and ammunition, Maassen has moved for suppression of the firearms and ammunition, and any evidence or statements flowing from discovery of the firearms and ammunition.

Report and Recommendation at pp. 2-8 (footnotes omitted).[1] Upon review of the record, the court adopts all of Judge Zoss's factual findings that have not been objected to by defendant Maassen.

## II. LEGAL ANALYSIS

### A. Standard Of Review

The court reviews the magistrate judge's report and recommendation pursuant to the statutory standards found in 28 U.S.C. § 636(b)(1):

---

[1]The court notes that while Judge Zoss refers to the IRS employee contacted by Hopkins as "Chris Nevel", it is clear from the transcript of the evidentiary hearing that this person's name is "Chris Nebel." Tr. at 11. As such, the court will refer to this person as "Chris Nebel" in the body of this order but will not alter references to this person in quotations to Judge Zoss's Report and Recommendation.

> A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

28 U.S.C. § 636(b)(1) (2006); *see* Fed. R. Civ. P. 72(b) (stating identical requirements); N.D. IA. L.R. 72, 72.1 (allowing the referral of dispositive matters to a magistrate judge but not articulating any standards to review the magistrate judge's report and recommendation). While examining these statutory standards, the United States Supreme Court explained:

> Any party that desires plenary consideration by the Article III judge of any issue need only ask. Moreover, while the statute does not require the judge to review an issue *de novo* if no objections are filed, it does not preclude further review by the district judge, *sua sponte* or at the request of a party, under a *de novo* or any other standard.

*Thomas v. Arn*, 474 U.S. 140, 154 (1985). Thus, a district court *may* review de novo any issue in a magistrate judge's report and recommendation at any time. *Id.* If a party files an objection to the magistrate judge's report and recommendation, however, the district court *must* "make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). In the absence of an objection, the district court is not required "to give any more consideration to the magistrate's report than the court considers appropriate." *Thomas*, 474 U.S. at 150.

De novo review, of course, is nondeferential and generally allows a reviewing court to make an "independent review" of the entire matter. *Salve Regina College v. Russell*, 499 U.S. 225, 238 (1991) (noting also that "[w]hen *de novo* review is compelled, no form

of appellate deference is acceptable"); *see Doe v. Chao*, 540 U.S. 614, 620-19 (2004)
(noting de novo review is "distinct from any form of deferential review"). The de novo
review of a magistrate judge's report and recommendation, however, only means a district
court "'give[s] fresh consideration to those issues to which specific objection has been
made.'" *United States v. Raddatz*, 447 U.S. 667, 675 (1980) (quoting H.R. Rep. No. 94-
1609, at 3, *reprinted in* 1976 U.S.C.C.A.N. 6162, 6163 (discussing how certain
amendments affect 28 U.S.C. § 636(b))). Thus, while de novo review generally entails
review of an entire matter, in the context of § 636 a district court's *required* de novo
review is limited to "de novo determination[s]" of only "those portions" or "specified
proposed findings" to which objections have been made. 28 U.S.C. § 636(b)(1); *see*
*Thomas*, 474 U.S. at 154 ("Any party that desires plenary consideration by the Article III
judge of any *issue* need only ask." (emphasis added)). Consequently, the Eighth Circuit
Court of Appeals has indicated de novo review would only be required if objections were
"specific enough to trigger *de novo* review." *Branch v. Martin*, 886 F.2d 1043, 1046 (8th
Cir. 1989). Despite this "specificity" requirement to trigger de novo review, the Eighth
Circuit Court of Appeals has "emphasized the necessity . . . of retention by the district
court of substantial control over the ultimate disposition of matters referred to a
magistrate." *Belk v. Purkett*, 15 F.3d 803, 815 (8th Cir. 1994). As a result, the Eighth
Circuit has been willing to "liberally construe[]" otherwise general pro se objections to
require a de novo review of all "alleged errors," *see Hudson v. Gammon*, 46 F.3d 785,
786 (8th Cir. 1995), and to conclude that general objections require "full *de novo* review"
if the record is concise, *Belk*, 15 F.3d at 815 ("Therefore, even had petitioner's objections
lacked specificity, a *de novo* review would still have been appropriate given such a concise
record."). Even if the reviewing court must construe objections liberally to require de
novo review, it is clear to this court that there is a distinction between making an objection

and making no objection at all. *See Coop. Fin. Assoc., Inc. v. Garst*, 917 F. Supp. 1356, 1373 (N.D. Iowa 1996) ("The court finds that the distinction between a flawed effort to bring objections to the district court's attention and no effort to make such objections is appropriate."). Therefore, this court will strive to provide de novo review of all issues that might be addressed by any objection, whether general or specific, but will not feel compelled to give de novo review to matters to which no objection at all has been made.

In the absence of any objection, the Eighth Circuit Court of Appeals has indicated a district court should review a magistrate judge's report and recommendation under a clearly erroneous standard of review. *See Grinder v. Gammon*, 73 F.3d 793, 795 (8th Cir. 1996) (noting when no objections are filed and the time for filing objections has expired, "[the district court judge] would only have to review the findings of the magistrate judge for clear error"); *Taylor v. Farrier*, 910 F.2d 518, 520 (8th Cir. 1990) (noting the advisory committee's note to Fed. R. Civ. P. 72(b) indicates "when no timely objection is filed the court need only satisfy itself that there is no clear error on the face of the record"); *Branch*, 886 F.2d at 1046 (contrasting de novo review with "clearly erroneous standard" of review, and recognizing de novo review was required because objections were filed). The court is unaware of any case that has described the clearly erroneous standard of review in the context of a district court's review of a magistrate judge's report and recommendation to which no objection has been filed. In other contexts, however, the Supreme Court has stated the "foremost" principle under this standard of review "is that '[a] finding is "clearly erroneous" when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'" *Anderson v. City of Bessemer City*, 470 U.S. 564, 573-74 (1985) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)). Thus, the clearly erroneous standard of review is deferential, *see Dixon v. Crete Medical Clinic,*

*P.C.*, 498 F.3D 837, 847 (8th Cir. 2007) (noting a finding is not clearly erroneous even if another view is supported by the evidence), but a district court may still reject the magistrate judge's report and recommendation when the district court is "left with a definite and firm conviction that a mistake has been committed," *U.S. Gypsum Co.*, 333 U.S. at 395.

Even though some "lesser review" than de novo is not "positively require[d]" by statute, *Thomas*, 474 U.S. at 150, Eighth Circuit precedent leads this court to believe that a clearly erroneous standard of review should generally be used as the baseline standard to review all findings in a magistrate judge's report and recommendation that are not objected to or when the parties fail to file any timely objections, *see Grinder*, 73 F.3d at 795; *Taylor*, 910 F.2d at 520; *Branch*, 886 F.2d at 1046; *see also* Fed. R. Civ. P. 72(b) advisory committee's note ("When no timely objection is filed, the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation."). In the context of the review of a magistrate judge's report and recommendation, the court believes one further caveat is necessary: a district court always remains free to render its own decision under de novo review, regardless of whether it feels a mistake has been committed. *See Thomas*, 474 U.S. at 153-54. Thus, while a clearly erroneous standard of review is deferential and the minimum standard appropriate in this context, it is not mandatory, and the district court may choose to apply a less deferential standard.[2]

---

[2] The Eighth Circuit Court of Appeals, in the context of a dispositive matter originally referred to a magistrate judge, does not review a district court's decision in similar fashion. The Eighth Circuit Court of Appeals will either apply a clearly erroneous or plain error standard to review factual findings, depending on whether the appellant originally objected to the magistrate judge's report and recommendation. *See United States*

(continued…)

As noted above, defendant Maassen has filed objections to Judge Zoss's Report and Recommendation. The court, therefore, undertakes the necessary review of Judge Zoss's recommended disposition of defendant Maassen's motion to suppress.

---

[2](…continued)

*v. Brooks*, 285 F.3d 1102, 1105 (8th Cir. 2002) ("Ordinarily, we review a district court's factual findings for clear error . . . . Here, however, the record reflects that [the appellant] did not object to the magistrate's report and recommendation, and therefore we review the court's factual determinations for plain error." (citations omitted)); *United States v. Looking*, 156 F.3d 803, 809 (8th Cir. 1998) ("[W]here the defendant fails to file timely objections to the magistrate judge's report and recommendation, the factual conclusions underlying that defendant's appeal are reviewed for plain error."). The plain error standard of review is different than a clearly erroneous standard of review, *see United States v. Barth*, 424 F.3d 752, 764 (8th Cir. 2005) (explaining the four elements of plain error review), and ultimately the plain error standard appears to be discretionary, as the failure to file objections technically waives the appellant's right to appeal factual findings, *see Griffini v. Mitchell*, 31 F.3d 690, 692 (8th Cir. 1994) (stating an appellant who did not object to the magistrate judge's report and recommendation waives his or her right to appeal factual findings, but then choosing to "review[] the magistrate judge's findings of fact for plain error"). An appellant does not waive his or her right to appeal questions of law or mixed questions of law and fact by failing to object to the magistrate judge's report and recommendation. *United States v. Benshop*, 138 F.3d 1229, 1234 (8th Cir. 1998) ("The rule in this circuit is that a failure to object to a magistrate judge's report and recommendation will *not* result in a waiver of the right to appeal '"when the questions involved are questions of law or mixed questions of law and fact."'" (quoting *Francis v. Bowen*, 804 F.2d 103, 104 (8th Cir. 1986), in turn quoting *Nash v. Black*, 781 F.2d 665, 667 (8th Cir. 1986))). In addition, legal conclusions will be reviewed de novo, regardless of whether an appellant objected to a magistrate judge's report and recommendation. *See, e.g.*, *United States v. Maxwell*, 498 F.3d 799, 801 n.2 (8th Cir. 2007) ("In cases like this one, 'where the defendant fails to file timely objections to the magistrate judge's report and recommendation, the factual conclusions underlying that defendant's appeal are reviewed for plain error.' We review the district court's legal conclusions de novo." (citation omitted)).

### B. Objections To Findings Of Fact

#### 1. Buildings on Parcel Two

Defendant Maassen initially objects to the factual finding that "[t]here were no buildings on Parcel Two, as described in the Order of sale." Report and Recommendation at 3. Defendant Maassen asserts that it is clear from the record that defendant Maassen's home as well as various outbuildings are located on Parcel Two. Although defendant Maassen is correct in his assertion that the record clearly establishes that defendant Maassen's home as well as various outbuildings are located on Parcel Two, Judge Zoss's factual finding pertains only to the legal description of Parcel Two "as described in the Order of Sale." The Order of Sale does not disclose the existence of any buildings on either Parcel One or Parcel Two, but merely contains a precise geographic description of the land making up Parcel One and Parcel Two. Therefore, this objection is overruled.

#### 2. Timing of SWAT team's protective sweep

Defendant Maassen also objects to the following factual finding:

> While Walhof was retrieving a copy of the order, he advised the SWAT team they could enter and begin a protective sweep of the property. Walhof showed Maassen the order, and Maassen informed Walhof that the real property containing the Maassens' residence and outbuildings was exempted from the court order. He indicated the officers had no right to be on his property and were trespassing.

Report and Recommendation at 5. The precise nature of defendant Maasen's objection is not clear. Defendant Maassen asserts that he is objecting to this factual finding "because it is clear from the transcript and testimony that as the Marshals were detaining the Maassens some distance from the family home, approximately 10 members of the SWAT team entered the home to begin a generalized sweep of the interior." Defendant's Objections at 7. The court reads defendant Maassen's objection to be directed to Judge

Zoss's factual finding regarding the timing of the SWAT team's deployment. Upon review of the record, it is clear that the SWAT team began its protective sweep as soon as the Deputy Marshals had detained defendant Maassen and his wife. However, the court is unable to find any reference in the record to Deputy Marshal Walhof's actually advising the SWAT team to proceed with its protective sweep while he was in the process of obtaining his copy of the Order of Sale. Therefore, this objection is sustained in so far as the court is unable to find that Deputy Marshal Walhof advised the SWAT team to proceed with its protective sweep while he was in the process of obtaining his copy of the Order of Sale.

### 3. *The scope of the Order of Sale*

Defendant Maassen further objects to the following factual finding:

> While Nevel was conducting this research, the SWAT team was doing a protective sweep of the property. Inside the residence, the officers discovered a 12-gauge shotgun, a .22 caliber rifle, and some ammunition.

Report and Recommendation at 6. Defendant Maassen asserts that he is objecting to this factual finding "because it is clear from the transcript and testimony that a question of the scope and extent of the coverage of the Order of Sale arose before the SWAT team entered the residence." Defendant's Objections at 7.

Deputy Marshal Walhof testified that after he and Deputy Marshal Chad McCormick had secured both defendant Maassen and his wife, they remained situated in approximately the same location and from that location they observed the SWAT team commence its protective sweep of the premises. Tr. at 61. At some point while the SWAT team's protective sweep was ongoing, Deputy Marshal Walhof obtained his copy of the Order of Sale and showed it to defendant Maassen. After reviewing the Order of Sale, defendant Maassen told Deputy Marshal Walhof that the Order of Sale contained "the

wrong legal description" and that the officers did not "belong on this property." Tr. at 66. Upon being informed of this and while the SWAT team was still conducting its protective sweep, Deputy Marshal Walhof called IRS agent Hopkins and informed him about defendant Maassen's assertion that they did not have legal authority to be on his property. IRS agent Hopkins, in turn, immediately called technical services at the IRS's Omaha office and spoke to Chris Nebel, requesting that he investigate the legal description of the property that was subject to seizure. Hopkins testified that he received a return telephone call from Nebel advising Hopkins that "you are good to go." Tr. at 14. After this conversation with Nebel, Hopkins proceeded to the Maassen property but was held up in the driveway to that property for "probably twenty minutes while law enforcement continued to sweep the area to ensure that it was safe." Tr. at 14. Thus, it is clear that the SWAT team's protective sweep began before Hopkins was contacted by Deputy Marshal Walhof regarding defendant Maassen's assertion that they did not have legal authority to be on his property. Therefore, this objection is also overruled.

## C. Objections To Legal Conclusions

### 1. Applicability of Leon type good faith exception here

Defendant Maassen also objects to Judge Zoss's conclusion that the search of defendant Maassen's home is lawful under the good faith exception of *United States v. Leon*, 468 U.S. 897 (1984). Specifically, defendant Maassen objects to application of *Leon* to the situation here, a valid court order rather than an invalid search warrant.

In *Leon*, the United States Supreme Court held that evidence obtained pursuant to a subsequently invalidated search warrant need not be excluded from the prosecution's case in chief if the executing officers acted in objectively reasonable reliance on the issuing court's determination of probable cause and technical sufficiency. *Id.* at 922-23.

"[A]bsent allegations that the [issuing judge] was not neutral, 'suppression is appropriate only if the officers were dishonest or reckless in preparing their affidavit or could not have harbored an objectively reasonable belief in the existence of probable cause.'" *United States v. Fulgham*, 143 F.3d 399, 401 (8th Cir. 1998) (quoting *Leon*, 468 U.S. at 926).

While *Leon* concerned the execution of a search warrant, the court concurs with Judge Zoss's conclusion that the Order of Sale here was tantamount to a search warrant. Both a search warrant and an order of sale carry with them the imprimatur of a court of law authorizing agents of the state to gain access to private property. In other circumstances, federal courts have held such court orders to be the equivalent of a warrant for Fourth Amendment purposes. *Nicholson v. Scoppetta*, 344 F.3d 154, 176 (2nd Cir. 2003) (noting that "a Family Court order is probably the equivalent of a warrant for Fourth Amendment purposes."); *Tenenbaum v. Williams*, 193 F.3d 581, 602 (2nd Cir. 1999) (holding that in the context of an order authorizing the seizure of a child by the state during an abuse investigation, "a court order is the equivalent of a warrant."). Nonetheless, because the situation here concerns a valid Order of Sale for certain real property owned by defendant Maassen and his wife, which was executed on the wrong premises, as opposed to an invalid search warrant, such as was executed in *Leon*, executed on the correct premises, the court concludes that the issue presented in this case is not controlled by *Leon*, but is instead controlled by the United States Supreme Court's decision in *Maryland v. Garrison*, 480 U.S. 79 (1987) and its progeny. *See United States v. Schroeder,* 129 F.3d 439, 442 (8th Cir. 1997) (holding that *Leon* good faith exception inapplicable where the warrant is not invalid).

In *Garrison*, the police obtained and executed a valid warrant to search the person of a person named McWebb and "'the premises known as 2036 Park Avenue third floor apartment.'" *Id*. at 80. When the police applied for the search warrant and when they

executed their search, they reasonably believed that there was only one apartment on the third floor of 2036 Park Avenue.   There were, however, two apartments on the third floor: one occupied by McWebb and one occupied by Garrison.  Before the police realized that there were two apartments on the third floor, they had entered Garrison's apartment and observed certain contraband. Garrison was charged and convicted based on the evidence found during the search of his apartment.   The Court of Appeals of Maryland reversed his conviction, holding that the search of his apartment and the seizure of the evidence was in violation of the Fourth Amendment.  *Id*. at 83-84.

The United States Supreme Court reversed.  Upon concluding that the warrant itself was valid, the Court turned to consider the "question whether the execution of the warrant violated [Garrison's] constitutional right to be secure in his home."  *Id*. at 86.  The Court instructed that although "the purposes justifying a police search strictly limit the permissible extent of the search," there is also "the need to allow some latitude for honest mistakes that are made by officers in the dangerous and difficult process of making arrests and executing search warrants."  *Id*. at 87.  After reviewing the rationale for its decision in *Hill v. California*, 401 U.S. 797 (1971), the Court observed "that an officer's reasonable misidentification of a person does not invalidate a valid arrest is equally applicable to an officer's reasonable failure to appreciate that a valid warrant describes too broadly the premises to be searched," and that "the validity of the search of [Garrison's] apartment pursuant to a warrant authorizing the search of the entire third floor depends on whether the officers' failure to realize the overbreadth of the warrant was objectively understandable and reasonable."[3] *Garrison*, 480 U.S. at 87-88.  The Court concluded that

---

[3] In *Hill*, the police had probable cause to arrest a man named Hill. However, when the police arrived at Hill's apartment, they encountered a man named Miller in the

(continued…)

it was "objectively understandable and reasonable" because the "objective facts available to the officers at the time suggested no distinction between McWebb's apartment and the third-floor premises." *Id.* at 88. *"Garrison* makes clear that the Fourth Amendment's allowance for officers' honest mistakes is limited to mistakes that are objectively reasonable." *Dawkins v. Graham*, 50 F.3d 532, 534 (8th Cir. 1995). "Thus, under *Garrison*, the execution of a valid warrant on the wrong premises violates the Fourth Amendment if the officers should know the premises searched are not the premises

---

[3](...continued)
apartment instead. Despite Miller's protestations that he was not Hill, the police believed in good faith that Miller was Hill, and they arrested him. During a search of Hill's apartment following Miller's arrest, police found contraband that was subsequently used against Hill at a criminal trial. Hill was convicted, and his conviction was upheld by the California appellate courts. The Supreme Court affirmed Hill's conviction. In doing so, the Court rejected Hill's assertion that the arrest of Miller, which subsequently resulted in the search of Hill's apartment, was invalid, holding that "when the police have probable cause to arrest one party, and when they reasonably mistake a second party for the first party, then the arrest of the second party is a valid arrest." *Hill*, 401 U.S. at 802 (citation omitted and internal punctuation altered). The Court explained that:

> The upshot was that the officers in good faith believed Miller was Hill and arrested him. They were quite wrong as it turned out, and subjective good-faith belief would not in itself justify either the arrest or the subsequent search. But sufficient probability, not certainty, is the touchstone of reasonableness under the Fourth Amendment and on the record before us the officers' mistake was understandable and the arrest a reasonable response to the situation facing them at the time.

*Id.* at 803-04. Turning then to the validity of the search of Hill's apartment, the Court also rejected Hill's assertion that the search was invalid, concluding that "[i]n these circumstances the police were entitled to do what the law would have allowed them to do if Miller had in fact been Hill, that is, to search incident to arrest and to seize evidence of the crime the police had probable cause to believe Hill had committed." *Id.* at 804.

described in the warrant, i.e., the officers' mistake is not objectively reasonable." *Id*. (citing *Garrison*, 480 U.S. at 96-88). Therefore, the court must determine whether the officers' mistake in searching the portion of Parcel Two that was identified in the exception language contained in the Order of Sale was objectively reasonable. This inquiry requires the court to consider defendant Maassen's final objection.

### 2. Were officers' actions objectively reasonable

Defendant Maassen objects to Judge Zoss's conclusion that:

> In the present case, the officers enforcing the Order of Sale were objectively reasonable in relying on others to decipher the complexities of a confusing legal description.

Report and Recommendation at 14. Defendant Maassen argues that the government agents executing the Order of Sale had reasonable notice, before entering defendant Maassen's home, that their authority as to that particular section of property was questionable.

Upon *de novo* review of the record, the court cannot concur in Judge Zoss's conclusion that the officers enforcing the Order of Sale were objectively reasonable in their reliance on others to interpret the legal description contained in the Order of Sale. While the officers must be commended for contacting both the IRS's Omaha office as well as the county auditor's office in order to attempt to make sense of the legal description contained in the Order of Sale, the court is compelled to conclude that their contacts with these offices should have raised further red flags about the exception language contained in the legal description within the Order of Sale and resulted in further inquiries about the precise section of property excised from Parcel Two. When IRS agent Hopkins contacted Chris Nebel in the IRS Omaha office, Nebel read him a legal description of Parcel Two which did not include the exception language contained in the Order of Sale. Similarly, when Hopkins contacted the county auditor's office, the woman in that office again read him back a description of Parcel Two which did not include the exception language. On neither

occasion did Hopkins inquire about what portion of Parcel Two was clearly contained in the exception language contained within the Order of Sale. Hopkins offered this explanation at the evidentiary hearing for why he made no inquires about the exception language:

> It wasn't on the record. And the reason that I didn't pursue it any further is if it is excepted out, I just make the assumption that someone else owns it. It can be excepted out for highway, or it is a corner of a piece of property or something.

Tr. at 12. Thus, Hopkins made no attempt to delineate what portion of Parcel Two was contained within the exception language of the Order of Sale and not subject to search and seizure. Here, rather than ask the auditor, or his own office, whether defendant Maassen was the owner of all of Parcel Two and receive a definitive answer, Hopkins chose to assume that the portion of property contained in the exception language was not Maassen's and therefore not subject to the Order of Sale. As a result, Hopkins specific inquiries to both Nebel at the IRS Omaha office and the county auditor's office as to whether Maassen's home and business were included in Parcel Two utterly failed to answer the crucial question of whether Maasen's home was included in that portion of Parcel Two contained in the exception language of the Order of Sale and therefore was not subject to search and seizure. Thus, the court cannot deem the officers' actions in this regard to be objectively reasonable. Therefore, this objection is sustained.

### III. CONCLUSION

Therefore, for the reasons set forth above, the court, upon a *de novo* review of the record, rejects Judge Zoss's Report and Recommendation and **grants** defendant Maassen's motion to suppress.

**IT IS SO ORDERED.**

**DATED** this 14th day of February, 2008.

MARK W. BENNETT
U. S. DISTRICT COURT JUDGE
NORTHERN DISTRICT OF IOWA